**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**PIDY T. TIGER,**

                              **Petitioner,**

         **v.**                                                    **CASE NO. 19-3088-JWL**

**SAM CLINE,**

                              **Respondent.**

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner and state prisoner Pidy T. Tiger, who proceeds pro se and in forma pauperis, challenges his state court convictions of rape and aggravated indecent liberties with a child. Having considered Petitioner's claims, together with the state-court record and relevant legal precedent, the Court concludes that Petitioner is not entitled to federal habeas corpus relief and denies the petition.

### Nature of the Petition

In Grounds One and Two, Petitioner asserts that he received unconstitutionally ineffective assistance of counsel during his direct appeal; that counsel is hereinafter referred to as direct-appeal counsel. (Doc. 6, p. 5-7, 16-19.) In Grounds Three and Four, he asserts that he received unconstitutionally ineffective assistance of counsel from the attorney, hereinafter referred to as substitute counsel, who was appointed to represent Petitioner during a post-conviction, pre-sentencing hearing on whether his trial counsel was ineffective. *Id.* at 8-10, 20-22. In Ground Five, Petitioner argues that in light of the United States Supreme Court's opinion in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), the state courts lacked jurisdiction to convict and sentence him for his crimes. (Doc. 6, p. 23-26.)

1

**Petitioner's Request that Certain Facts be Deemed Admitted**

In his traverse, Petitioner asks this Court to find that facts alleged in a previously denied "request for admission"[1] are now admitted and conclusively established for purposes of this federal habeas matter. (Doc. 35, p. 1.) The Court will deny the request. Although Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts provides for discovery where good cause is shown, Petitioner is not entitled to utilize requests for admission to establish facts in this matter. *See Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."). Instead, "[g]enerally speaking, federal habeas review is limited to the record that was before the state court that adjudicated the claim on the merits." *Simpson v. Carpenter*, 912 F.3d 542, 575 (10th Cir. 2018) (internal quotation marks and citations omitted). Moreover, the Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In the case now before the Court, discovery is not necessary, nor is it necessary or proper for this Court to deem certain facts admitted by Respondent.

**Factual and Procedural Background**

The following facts are taken from the Kansas Court of Appeals (KCOA) opinion in Petitioner's direct appeal.[2] Additional facts will be provided as necessary in the analysis sections below.

On November 6, 2011, Tiger was staying at his sister and brother-in-law's

---

[1] Petitioner does not identify the document he refers to as a "request for admission." (Doc. 35, p. 1.) The Court presumes that Petitioner is referring to the "request for discovery pursuant to (2254) Rule 6(a)," which he filed on January 6, 2023, and attached to which were proposed interrogatories. (Docs. 23, 23-1.) That motion was denied in an order issued January 9, 2023. (Doc. 26.)

[2] The Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Although Petitioner continues to maintain his innocence and claim that any findings to the contrary are erroneous, he has not presented clear and convincing evidence to this Court that the recitation of facts by the KCOA is inaccurate.

home. The couple resided at this home with five of their children. Three daughters shared a room, two sleeping on the lower bunk of a metal-framed bunk bed, while the youngest child, 10–year–old T.J., slept on the upper bunk. Two sons, one about 20 and the other a teenager, slept in another room, on a metal-framed bunk bed.

Also staying at the house were Crystal Johnson, a daughter of Tiger's brother-in-law from a prior relationship, and Crystal's three children. Crystal and her children slept in the living room on a mattress or couches. Crystal was eight and a half months pregnant with Tiger's child, their second together.

During the evening, Tiger was in the girls' room, lying with T.J. in the upper bunk. T.J. testified, "I was drawing pictures and he came in and taught me my multiplication facts." T.J. said Tiger left without incident, and she eventually went to sleep.

Crystal testified that Tiger was "kind of in and out of consciousness" that evening "because he was drinking a lot." When bedtime arrived, Tiger laid on the mattress with Crystal and the children. Tiger made sexual advances towards Crystal, but she testified, "I'm uncomfortable, he's intoxicated, so I kept pushing his hand away, pushing his hand, pushing his hand away."

Tiger eventually got up from the mattress. Crystal then heard a "light screech, like as if somebody was getting in or getting out" of one of the bunk beds. Crystal assumed Tiger had gone into her half-brothers' room to use a computer or play video games, which they would sometimes do late at night.

Crystal thought Tiger would fall asleep wherever he was, "so I don't have to worry about him coming back, you know, messing with me." After hearing nothing for 20 minutes, she arose to use the restroom and to check on Tiger, "just to make sure." Crystal planned to "peek in" to her half-brothers' room "to see if [Tiger] was sleeping." When she entered the hallway, however, Crystal heard a "light screech" and realized the noise was coming from her sisters' room. Crystal entered her half-sisters' room, which was partially illuminated by the bathroom lights, and saw Tiger "just sitting there at the foot of [T.J.'s] bed." Crystal testified T.J. "kind of looked like she was just waking up out of her rest . . . [l]ike maybe she didn't even realize that he was there or I was there." According to Crystal, T.J.'s sisters were "knocked out asleep on the bottom bunk."

Crystal began yelling at Tiger, demanding "what's going on, what are you doing in here." She said Tiger did not respond, "like he was coming out of—you know, like he was sleeping too." At trial, Crystal testified that Tiger was clothed while on T.J.'s bed, although his pants were "sagging" and she could see "the crack of his bottom . . . like maybe." Contrary to this trial testimony, Detective Kim Warehime, who interviewed Crystal after the incident, testified that she reported Tiger's pants were "almost pulled down to his knees," and that he was wearing no underwear, the undergarment having been left behind in the living room.

3

Crystal's trial testimony and her pretrial interview responses differed in another important aspect. At trial, she testified that T.J. was clothed in shorts and a "spaghetti strap shirt," which was somewhat pushed up, exposing the girl's stomach. When interviewed by Officer Vincent Reel, however, Crystal reported T.J. was "laying *[sic]* on her back with her shirt up above her breast area and her pants down to her knees because she described she could see the skin line of [T.J.] from her chest down to her knees of her actual skin [sic] and described that she could also see [T J.'s] nipples."

Crystal told Tiger to leave the room. She testified, "He was just blurting out things. He was like saying something in the nature of you just mad and—something about the other girl he was seeing and you want to see me go back to jail or something." This testimony related to Crystal's recent discovery that Tiger was seeing another woman, which significantly strained their relationship.

For her part, T.J. told police officers that at some point during the evening, Tiger "was giving her looks that intimidated or scared her." According to Detective William Riddle, T.J. eventually related she was

> "on the top bunk of the bunk beds. And that Mr. Tiger got up there with her, that he was on top of her. That he had moved her shirt and bra, had placed his mouth on her breasts. She is describing him shaking the bed as he's on top of her. That he's the one that is shaking it. She is describing him kissing her on the cheek, on the breast, kissing her on her private. She's also describing pressure on her private and that he's placing that pressure on her private with his own private."

The detective testified that T.J. identified what she meant by "private" with the aid of anatomical drawings. T.J. also specified that her shorts were "at her ankles" during the sexual abuse.

T.J. gave essentially the same account of the incident to Ronda Eagleson, a sexual assault nurse examiner. As part of a clinical examination of T.J.'s genitalia, Nurse Eagleson used a magnifying camera which revealed "two tears . . . in the posterior fourchette at 6 o'clock." At trial, the nurse agreed this finding was made "within or inside the female sex organ." According to Nurse Eagleson, the "cause . . . would typically be a stretching beyond the point of elasticity . . . typically from some kind of blunt force." She also opined that her findings were "consistent with the history given by [T.J.]."

As part of the criminal investigation, the State conducted DNA testing and presented Dr. Steven Hoofer, a DNA expert, at trial. The State's testing was negative for the presence of semen, but swabs taken from T.J.'s breasts were presumptively positive for the possible presence of saliva. At least two individuals

had contributed the possible saliva, the major contributor being consistent with Tiger's DNA profile, and the minor contributor being consistent with T.J.'s profile.

Of note, at trial, T.J. initially testified she could not recall anything because she had been sleeping. Eventually, however, T.J. related the same account she had provided to the police officers and Nurse Eagleson. On cross-examination, T.J. said she knew the events had happened although she was sleeping "[b]ecause I could feel him moving and stuff." T.J. said her bra was pushed up, that her pants were pulled down to her feet, and that Tiger's pants were also down.

*State v. Tiger*, 2015 WL 1513955, *1-3 (Kan. Ct. App. Mar. 27, 2015) (*Tiger I*) (unpublished opinion), *pet. for rev. withdrawn* June 16, 2015.

In November 2011, Petitioner was charged with aggravated criminal sodomy, aggravated indecent liberties with a child, and rape. *Id.* at *3. The district court appointed counsel ("trial counsel") to represent him and he was arraigned in December 2011. *Id.* In August 2012, Petitioner filed a pro se motion for dismissal asserting the violation of his right to a speedy trial, arguing that trial counsel had obtained continuances "'against [his] wishes and without good cause.'" *Id.* On October 22, 2012, the district court held a hearing on the motion, at which it agreed with the State that the statutory speedy trial period had not yet run and it denied the motion. *Id.* Petitioner's jury trial began the following day and, on October 26, 2012, the jury acquitted him of aggravated criminal sodomy but convicted him of the two remaining counts. *Id.*

Before sentencing, Petitioner filed a motion for new trial and argued, among other things, that the court had erred when it denied the motion to dismiss on speedy trial grounds. *Id.* At a hearing on the motion, trial counsel advised the court that Petitioner wished the record to be clear that he had not acquiesced to continuances sought by trial counsel and that trial counsel had sought the continuances without Petitioner's permission. *Id.* at *4. Petitioner personally addressed the court at the hearing, arguing that trial counsel had provided ineffective assistance. *Id.* at *4. After hearing from the State, the court advised Petitioner that he was required to file a written pro se

motion articulating his ineffective assistance of counsel claims. *Id.* at *5.

In January 2013, Petitioner filed a "pro se 'Motion for Relief Based on Ineffective Assistance of Counsel.'" *Id.* at *5. The district court appointed substitute counsel to represent Petitioner at a June 2013 evidentiary hearing on the motion and through the rest of the trial proceedings. *Id.* Substitute counsel asked the court to find that trial counsel was ineffective, but "[t]he bulk" of substitute counsel's argument "focused on his request" that the court reconsider its denial of the speedy trial motion, grant the motion, and discharge Petitioner. *Id.* at *6. Ultimately, the district court denied relief, holding that trial counsel's representation of Petitioner was reasonable and that Petitioner had not been prejudiced by trial counsel's representation. *Id.* at *5-6. In July 2013, the court sentenced Petitioner to two concurrent life sentences without the possibility of parole for 25 years. *Id.* at *6.

Petitioner appealed, arguing, among other things, that the district court erred by finding trial counsel had provided effective representation and by instructing the jury on voluntary intoxication. *Id.* at *6, 12-13, 15-16. The Kansas Court of Appeals (KCOA) rejected Petitioner's arguments and affirmed his convictions and sentences. *Id.* at *17. Petitioner filed a petition for review in the Kansas Supreme Court (KSC), but withdrew it on June 16, 2015. *See* Online Records of the Clerk of the Kansas Appellate Courts, Case No. 110,278.

Since that time, Petitioner has continued to pursue relief in the state courts, by way of filing at least seven separate motions for state habeas relief pursuant to K.S.A. 60-1507, as well as at least one motion for new trial, one motion to withdraw plea, and one motion to correct illegal sentence. *See State v. Tiger*, 2022 WL 4115573, *1-2 (Kan. Ct. App. Sept. 9, 2022) (unpublished opinion) (identifying multiple motions addressed in that matter); *State v. Tiger*, 2022 WL 3018065, *1 (Kan. Ct. App. July 29, 2022) (unpublished opinion) (affirming denial of a 60-1507 motion);

*State v. Tiger*, 2021 WL 1045178, *1-3 (Kan. Ct. App. Mar. 19, 2021) (unpublished opinion) (setting forth history of six 60-1507 actions Petitioner had previously pursued); *State v. Tiger*, 2018 WL 671374, *1 (Kan. Ct. App. Feb. 2, 2018) (unpublished opinion), *rev. denied* Oct. 30, 2018. All of Petitioner's state-court actions were unsuccessful.

On May 8, 2019, Petitioner filed in this Court a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) He filed the operative amended petition on July 23, 2021. (Doc. 6.) Ground Five of the amended petition was not exhausted in the state courts, so this Court stayed this matter and held it in abeyance while Petitioner returned to state court to exhaust it.[3] (See Docs. 9, 36.) Respondent has filed his answer (Doc. 28) and Petitioner has filed his traverse (Doc. 35). This matter is now fully briefed and is ready for decision.

Five asserted grounds for relief are before the Court: Grounds One and Two assert that direct-appeal counsel was ineffective, Grounds Three and Four assert that substitute counsel was ineffective, and Ground Five attacks the state courts' jurisdiction over Petitioner in light of *McGirt*. Each asserted ground for relief will be addressed in turn. First, however, the Court briefly will address Respondent's arguments in the answer that Grounds One and Five remain unexhausted, rendering this a mixed petition that the Court should dismiss.[4] (Doc. 28, p. 3.)

## Exhaustion

### Ground Five

The Court addresses the exhaustion of Ground Five first because it is easily resolved. Respondent's arguments in his answer[5] regarding the exhaustion of Ground Five were based on a

---

[3] The exhaustion of Ground Five is discussed below.

[4] Other than Grounds One and Five, "Respondent admits that Petitioner has exhausted his state court remedies with respect to his remaining claims." (Doc. 28, p. 3.) Thus, the Court does not address the exhaustion of Grounds Two, Three, or Four in this memorandum and order. *See Day v. McDonough*, 547 U.S. 198, 205-09 (2009) (comparing federal habeas timeliness requirements to the exhaustion requirement and concluding that where a respondent fails to raise such an affirmative defense, "district courts are permitted, but not obliged, to consider[ them] sua sponte").

[5] In the answer, Respondent also asserts that "this Court inexplicably denied Respondent's motion to dismiss the

petition for review that was pending before the KSC at the time the answer was filed. (*See* Doc. 28, p. 26-28.) Petitioner has since withdrawn the relevant petition for review, so Ground Five is no longer pending in any way before the Kansas state courts. (*See* Doc. 37.) Because the KCOA denied relief on the claim, it is fully exhausted and this Court may consider it in this action.

**Ground One**

In contrast, Petitioner's argument in Ground One is complex, which renders the exhaustion analysis complex. This is because, generally speaking, to satisfy the exhaustion requirement, Petitioner must have presented the very issues raised in the federal petition to the Kansas appellate courts, which must have denied relief. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); Kansas Supreme Court Rule 8.03B(a). Thus, for this Court to determine whether Petitioner argued the issue in Ground One to the state courts, this Court must first determine the nature of the argument or arguments in Ground One. Petitioner bears the burden to show he has exhausted available state remedies. *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992); *see also Parkhurst v. Pacheco*, 809 Fed. Appx. 556, 557 (10th Cir. 2020).

Some background information assists in understanding this issue. Direct-appeal counsel argued, among other things, that trial counsel "'performed deficiently when she denied [Petitioner's] right to a speedy trial by taking continuances to which he did not acquiesce or authorize.'" *Tiger*, 2015 WL 1513955, at *6. In other words, direct-appeal counsel argued that trial counsel "'denied [Petitioner] a speedy trial by taking numerous continuances without [his] permission.'" *Id.* at *9. The KCOA rejected this argument. *Id.*

In his current federal habeas petition, Petitioner asserts in Ground One that direct-appeal

---

petition" as a mixed petition containing exhausted and unexhausted grounds. (Doc. 28, p. 28.) The Court directs Respondent to its Memorandum and Order denying the motion to dismiss (Doc. 26), page 4 of which explains that the motion to dismiss was not authorized and thus was denied as procedurally improper.

counsel "was ineffective by not arguing speedy trial issue as a violation of defendant's right to be present at all critical stages." (Doc. 6, p. 5.) Although this statement by itself is less than clear, two pages attached to the petition include further argument on Ground One. *Id.* at 16-17. Therein, Petitioner points to an amendment to the Kansas speedy trial statute that went into effect on July 1, 2012—after Petitioner's alleged crimes, but prior to the jury convicting him—and added the following language:

> If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay.

*See State v. Brownlee*, 302 Kan. 491, 509 (2015).

Petitioner argues that under this amendment, the KCOA would not have reversed his convictions even if direct-appeal counsel had successfully argued that continuances initially attributed to him should not have been because he was not present for the continuance hearings. (Doc. 6, p. 16.) In other words, he contends that direct-appeal counsel was ineffective because she pursued an argument which could not lead to relief. Rather, Petitioner contends, direct-appeal counsel should have argued that Petitioner's constitutional due process rights were violated when trial counsel obtained continuances at a hearing at which he was not personally present to object. *Id.* at 16-17. He claims that if direct-appeal counsel had raised this due process argument,

> the state court would have no choice but to conclude that the petitioner was denied the fundamental right to be present and to due process. At that point the petitioner would be entitled to present exculpatory evidence as well as evidence of fourth amendment and *Brady* violations which would make it impossible to convict the petitioner. This issue was obvious and would have resulted in reversal.

(Doc. 6, p. 17 (citation omitted).)

In the answer, Respondent asserts that Petitioner did not raise to the state courts this specific

claim of ineffective assistance of direct-appeal counsel—that direct-appeal counsel should have argued a due process violation based on Petitioner's right to be present at continuance hearings. (Doc. 28, p. 16.) Respondent points to caselaw that explains that claims of ineffective assistance of counsel are treated as discrete when they are based on different alleged failures by counsel. *Id.* In his traverse, Petitioner disagrees, contending that the relevant inquiry should focus on "the underlying facts supporting the claim." (Doc. 35, p. 2.)

The Tenth Circuit has held that when a petitioner raises a claim of ineffective assistance of counsel in the state court but has "based it on different reasons than those expressed in his [federal] habeas petition," the alleged ineffectiveness that was not alleged in the state court has not been exhausted. *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999). Even if Petitioner raised claims that were related to or based on some of the same underlying facts, the purpose of the exhaustion requirement is to "give state courts a fair opportunity to act on [a Petitioner's] claims." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). The Court has carefully reviewed the extensive state court records Respondent has provided and finds no point at which Petitioner made the arguments now contained in Ground One. Petitioner himself appears to acknowledge in his traverse that he did "not precisely articulat[e] the argument that appellate counsel was ineffective for not identifying and briefing [the relevant argument] on direct appeal." (Doc. 35, p. 2.)

It cannot be said that the state courts had "a fair opportunity" to act on Petitioner's claims in Ground One when those arguments were never presented to the state courts. This remains true even though Petitioner argued to the state courts that direct-appeal counsel was ineffective for other reasons. Accordingly, the Court agrees with Respondent that Petitioner has failed to show that he exhausted the arguments now contained in Ground One of the petition.

The Court also agrees with Respondent that there no longer exists a procedural avenue by which Petitioner may raise the Ground One arguments to the state courts. Any 60-1507 motion filed now that sought to assert ineffectiveness of direct-appeal counsel would be successive and untimely. *See* K.S.A. 60-1507(c), (f). In situations such as this, where a petitioner fails to present a claim in the state courts, and would be procedurally barred from presenting it if he returned to state court, there is an anticipatory procedural bar which prevents the federal court from addressing the claim. *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007). A petitioner's unexhausted claim that is barred by anticipatory procedural default cannot be considered in habeas corpus unless he establishes cause and prejudice for his default of state court remedies or establishes a fundamental miscarriage of justice. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

To demonstrate cause for the anticipatory procedural default, Petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). He also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. In the alternative, Petitioner may show that the failure to consider the defaulted claim would result in a fundamental miscarriage of justice. To proceed under this exception, a petitioner "must make a colorable showing of factual innocence." *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). "This exception to the general rule barring consideration of defaulted claims "is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (brackets and internal quotation marks omitted). A petitioner seeking relief under a defaulted claim and asserting a claim of innocence must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable

doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006)(quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Even liberally construing Petitioner's pleadings—including his traverse, which was filed after Respondent asserted the anticipatory procedural bar—Petitioner has shown neither the cause and prejudice nor the fundamental miscarriage of justice required for this Court to consider the merits of Ground One. He has not identified any objective, external factor that impeded his ability to make the Ground One arguments in his first K.S.A. 60-1507 proceeding and he has not made a colorable showing of factual innocence of the crimes of which he was convicted. Accordingly, this Court may not consider the merits of the arguments in Ground One and may not grant federal habeas relief based on those arguments. The merits of the remaining four grounds for relief are addressed below.

**Standard of Review**

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The Tenth Circuit has explained:

> [A]pplication of § 2254(d)(1) requires two steps. First, as a "threshold matter," we must determine "what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) (quoting § 2254(d)(1)). In this context, clearly established federal law refers to holdings of the Supreme Court, not dicta. *Terry Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Those holdings "must be construed narrowly" and "on-point." *Fairchild v. Trammell*, 784 F.3d 702, 710 (10th Cir. 2015) (citation omitted). It isn't necessary

for the holding to "have had its genesis in [a] closely-related or similar factual context" to the case at issue, but "the Supreme Court must have expressly extended the legal rule to that context." *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If—and only if—the principle of federal law was clearly established, do we then move to the second step. *See id.* at 1017–18 ("The absence of clearly established federal law is dispositive under § 2254(d)(1)."). In step two, we "consider whether the state court decision was 'contrary to' or an 'unreasonable application of' that clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).

A state-court decision is "contrary to" clearly established law under § 2254(d)(1) if it "applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Lockett* [*v. Trammell*], 711 F.3d [1218,] 1231 [(10th Cir. 2013)] (brackets and citation omitted).

And a state court decision involves an "'unreasonable application' of clearly established federal law if it 'identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of [the] petitioner's case.'" *Id.* (citation omitted). Whether an application of a rule is unreasonable depends in part on the rule's specificity. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

Crucially, an "*unreasonable* application of federal law is different from an *incorrect* application of federal law." *Terry Williams*, 529 U.S. at 410, 120 S. Ct. 1495. A state court's application of federal law is unreasonable only if "*every* fairminded jurist" would "reach a different conclusion." *Brown v. Davenport*, —— U.S. ——, 142 S. Ct. 1510, 1530, 212 L. Ed. 2d 463 (2022). In other words, the state-court determination must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Davis v. Ayala*, 576 U.S. 257, 269–70, 135 S. Ct. 2187, 192 L. Ed. 2d 323 (2015) (citation omitted).

Our application of § 2254(d)(2) is similarly constrained. We cannot conclude that a state court's determination of the facts was unreasonable "merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. 305, 313–14, 135 S. Ct. 2269, 192 L. Ed. 2d 356 (2015) (cleaned up). Instead, we must defer to the state court's factual determinations if "reasonable minds reviewing the record might disagree about the finding in question." *Id.* (cleaned up). Thus, a state court's factual findings are presumed correct, and a petitioner bears the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

> "Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19, 134 S. Ct. 10, 187 L.Ed.2d 348 (2013). The standard stops short only of a "complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). So if the standard appears "difficult to meet, that is because it was meant to be." *Id.*

*Andrew v. White*, 62 F.4th 1299, 1310-12 (10th Cir. 2023).

Claims of ineffective assistance are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, for federal habeas purposes, *Strickland* is the "clearly established federal law" in question. Under *Strickland*, "a defendant must show both [(1)] that his counsel's performance fell below an objective standard of reasonableness and [(2)] that the deficient performance prejudiced the defense." *United States v. Holloway*, 939 F.3d 1088, 1102 (10th Cir. 2019) (internal quotation marks omitted). When such claims are brought in a federal habeas action challenging a state court conviction, the United States Supreme Court has further explained:

> Establishing that a state-court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable application is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

## Analysis

## Direct-Appeal Counsel (Ground Two)

As explained above, Ground One is subject to an anticipatory procedural bar and thus this Court may not consider it. Ground Two involves a voluntary intoxication instruction given to the

14

jury at Petitioner's criminal trial. Kansas' pattern jury instructions, called "PIK," include instructions for voluntary intoxication. The relevant voluntary intoxication PIK states: "'The defendant raises *describe the defense claimed* as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant.'" *Tiger*, 2015 WL 1513955, *14. Petitioner was personally present for the jury instruction conference during his trial. (Doc. 29-12, p. 112.) Although the "Defendant's Proposed Jury Instructions" included in the state court records do not include the voluntary intoxication instruction (Doc. 31-4, p. 130-41), the district judge said at the jury instruction conference that the defense had requested it. (Doc. 29-12, p. 112, 125.) After the prosecutor stated he had no objection to the instruction, Petitioner's trial counsel informed the Court that Petitioner

> was concerned that by giving the instruction that he is raising the defense of voluntary intoxication, that he is then admitting to criminal acts as an affirmative defense. And in no way does he want the jury to have some – any impression that he's agreeing that he committed the crime of agg [*sic*] indecent liberty or tried to rape her. . . . So he opposes that, he – telling the jury that he's raising voluntary intoxication . . . as a defense because he is not saying he did the actual crime. . . . [I]n no way does he want the jury to think he did the criminal act or the acts that he is being accused of.

*Id.* at 125-26.

Trial counsel also stated, however, that she believed it would be "'error to not advise the jury that the State's burden of proof does not shift,'" so she asked the district court to remove the first sentence of the instruction—that Petitioner "raises involuntary intoxication as a defense." *Tiger*, 2015 WL 1513955,  at *14. The State objected to the proposed modification and the district court "emphasized it would not 'vary the language of PIK.'" *Id.* The district court then asked whether the defense "'still want[ed] to raise voluntary intoxication and instruct as such,'" and Petitioner's counsel replied, "'Preserving our objection to how it's worded, yes, we still want to

be able to discuss the effects of alcohol and specific intent.'" *Id.* During closing argument, defense counsel emphasized to the jury:

> "In no way is Mr. Tiger saying that he did these matters but he gets an out because he was drunk. But what the law tells you is that there is alcohol, you have the evidence of alcohol, consumption to excess. It's there. So you as a juror get to decide how do we put this into this intent that he had to have to commit these crimes."

*Id.* at *15.

Later, direct-appeal counsel raised the issue of whether "[t]he district court erred in giving a voluntary intoxication jury instruction." (Doc. 30-7, p. 19.) More specifically, direct-appeal counsel pointed out that Petitioner had not included the instruction in question in his proposed instructions and she argued that the district court—rather than Petitioner—had proposed its inclusion. *Id.* at 20. Direct-appeal counsel emphasized that Petitioner had consistently maintained his innocence and asserted that the instruction as given misled the jury into believing that Petitioner was asserting the guilt-based voluntary intoxication defense. *Id.* at 21. Direct-appeal counsel specifically noted that, under Kansas case law, it was Petitioner's decision alone whether to present a guilt-based defense. *Id.* And "[w]hen the district court gave the instruction without the requested modification against Mr. Tiger's wishes, the district [court] presented a guilt based defense on Mr. Tiger's behalf. This was error." *Id.* at 21-22.

In its resulting opinion, the KCOA noted that although the only challenge to the jury instruction that was raised to the trial court was "the propriety of the first sentence" of the instruction, Petitioner "does not argue on appeal this challenged language" and the "failure to brief the first sentence . . . is . . . a waiver or abandonment on appeal." *Id.* The KCOA continued, however, to note that even assuming that the first sentence was erroneous, Petitioner failed to show that he was prejudiced by its inclusion in the instruction. *Id.* at *15. Finally, the KCOA stated that

16

"to the extent Tiger generally objects to the trial court's decision to instruct on voluntary intoxication, it is apparent that he requested the trial court to provide the instruction. Tiger therefore invited any error, which precludes a challenge to the trial court's decision on appeal." *Id.* Thus, the KCOA found "no reversible error regarding the voluntary intoxication instructions." *Id.*

In Petitioner's first K.S.A. 60-1507 motion, he argued among other things that "[a]ppellate counsel was ineffective for not properly arguing that the trial court erred in issuing a sua sponte instruction on voluntary intoxication, interfering with the defendant[']s constitutional right to present his theory of defense." (Doc. 31-2, p. 15.) He reiterated that voluntary intoxication is a guilt-based defense and the Sixth Amendment guaranteed Petitioner the right to choose his defense. Thus, he argued that since he had not wished to pursue a guilt-based defense, direct-appeal counsel was ineffective for not properly arguing that Petitioner's constitutional right to choose his defense was violated by the voluntary intoxication instruction. *Id.*

The district court denied relief on the issue, holding:

This allegation is denied without an evidentiary hearing. Movant requested the voluntary intoxication instruction to undermine specific intent, but wanted to alter the PIK language. Instead of altering the PIK language, this court instructed the jury pursuant to PIK Crim 4th 51.050, and allowed [trial counsel] to argue the matter to the jury. This court did not issue a sua sponte instruction on voluntary intoxication and did not interfere with movant's right to make his defense.

In the direct appeal, the Court of Appeals made an extensive ruling regarding this court's decision to give the voluntary intoxication instruction. The Court of Appeals ruled movant requested the instruction and had the opportunity to explain and argue the impact of the instruction as it pertained to a voluntary intoxication defense.

Movant fails to sufficiently prove that either prong of the test for ineffective assistance of counsel has been met. [Direct-appeal counsel] was not unreasonable for failing to raise the issue and there has been no showing of prejudice.

(Doc. 31-2, p. 101-02 (internal citations omitted).)

Petitioner appealed the denial of his 60-1507 motion, renewing his argument. *See Tiger v.*

*State*, 2018 WL 4376775, \*4 (Kan. Ct. App. Sept. 14, 2018) (unpublished), *rev. denied* April 29, 2019. The KCOA devoted very little space in the opinion to affirming, stating: "The record does not support these claims and both issues [related to ineffective assistance of direct-appeal counsel] were carefully and correctly addressed by the district court in its journal entry. Tiger's arguments on appeal are without merit. We affirm the district court's decision on these issues." *Id.* at \*4.

In this federal habeas petition, Petitioner articulated Ground Two as direct-appeal "counsel did not properly argue against the trial court's 'voluntary intoxication' instruction over defendant's objection." (Doc. 6, p. 7.) He further explains that direct-appeal "counsel argued it was error to use the 'wording' in the voluntary intoxication instruction over the defendant's objection. This was objectively unreasonable . . . ." *Id.* at 18. This clearly frames the issue as one of ineffective assistance of direct-appeal counsel.

Understandably, then, Respondent in his answer argued that "[t]he state courts reasonably rejected Petitioner's claim that his appellate counsel was ineffective for failing to raise on appeal the claim that the district court erred by giving a sua sponte instruction on voluntary intoxication." (Doc. 28, p. 22.) Yet Petitioner asserts in his traverse that Respondent "fail[ed] to address the substance of the petitioner's argument." (Doc. 35, p. 4.) Petitioner contends that "[t]he issue presented to the state court was that voluntary intoxication is a guilt based defense and no one including trial counsel can impose a guilt based defense on a defendant claiming his innocence. See pg. 15 of 1st 1507." (Doc. 35, p. 4.)

This is an inaccurate description of the relevant issue. Granted, direct-appeal counsel argued to the KCOA that the district court erred in giving the voluntary intoxication instruction (*see* Doc. 30-7, p. 19-22) and the KCOA rejected that argument, *see Tiger*, 2015 WL 1513955, at \*13-15. But Ground Two of the current federal habeas matter does not directly challenge that

ruling. Rather, as seen above, Petitioner has consistently framed Ground Two as a challenge to the effectiveness of direct-appeal counsel, an issue that was ruled on in the first 60-1507 proceeding. The distinction is important because it defines the scope of this Court's review.

When considering a claim that counsel was ineffective, this Court considers whether the KCOA's decision that counsel was *not* ineffective "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Respondent's answer addresses this question and, contrary to Petitioner's assertion in his traverse, sufficiently answers the claim set forth in Ground Two of the petition.

Turning to the merits of Ground Two, Petitioner argues that the KCOA's decision failed "to apply clearly established federal law because it directly implies that counsel and the court were free to discuss and decide a defense for the petitioner." (Doc. 6, p. 6-7, 18-19.) This interpretation of the KCOA's decision is not supported by the record now before this Court. Rather, the record reflects that the KCOA affirmed the district court's findings that (1) Petitioner requested the voluntary intoxication instruction, so the trial court had not issued the instruction sua sponte and thus did not interfere with Petitioner's right to control his defense; and (2) Petitioner did not demonstrate that he was prejudiced by direct-appeal-counsel's argument. Simply put, the Court will not read into the relevant KCOA decision the rationale that Petitioner sees there. Thus, this argument fails.

Petitioner also argues that the record reflects that he "clearly objected" to the voluntary intoxication instruction because it implied that he had committed the sexual acts at issue, yet the instruction was given to the jury anyway, violating his Sixth Amendment right to control his

defense. (Doc. 6, p. 19; Doc. 35, p. 4). Once again, however, this Court is constrained by the standard of review and the fact that Petitioner has framed Ground Two as an ineffective assistance of direct-appeal counsel claim. To the extent that this argument can be liberally construed to contend that the state courts unreasonably determined that Petitioner had, in fact, requested the voluntary intoxication jury instruction, such argument fails. The trial transcript reflects that the district judge stated at the instruction conference that it "is my understanding that the defense is requesting this defense," and neither Petitioner nor his counsel corrected that understanding. (Doc. 29-12, p. 125.)

Additionally, after the district judge ruled that he was "not going to vary the language of PIK" to comply with defense counsel's requested modification, the district judge asked, " [W]ith that position now from the Court, do you - - does the defense still want to raise voluntary intoxication and instruct as such?" *Id.* at 128. Petitioner's counsel replied, "'Preserving our objection to how it's worded, yes, we still want to be able to discuss the effects of alcohol and specific intent.'" *Id.* The transcript indicates no objection by Petitioner personally. Thus, the factual determination by the KCOA that Petitioner requested the voluntary intoxication instruction was not unreasonable.

Additionally, Petitioner argues that the state court decision was contrary to clearly established federal law under which instructing a jury on an affirmative, guilt-based defense when a defendant has objected to the instruction violates the Sixth Amendment . Thus, he argues, direct-appeal counsel was ineffective for failing to argue the constitutional violation and the state courts' determination to the contrary is objectively unreasonable. Respondent, on the other hand, asserts that the KCOA and the state district court reasonably applied the relevant federal law, so federal habeas relief is not warranted. (Doc. 28, p. 22-23.)

Respondent's argument prevails. First, as explained above, the state-court decision at issue in Ground Two is the decision that direct-appeal counsel did not provide ineffective representation when challenging the voluntary intoxication instruction. Thus, the clearly established Federal law in question is *Strickland*. Petitioner makes no argument that the state court ruling on the effectiveness of direct-appeal counsel applied a rule other than *Strickland*, nor does he claim that there is a case that has gone before the United States Supreme Court on materially indistinguishable facts in which the Supreme Court found direct-appeal counsel ineffective. Petitioner has not shown that the KCOA decision was "contrary to" clearly established federal law, as required for federal habeas relief under 28 U.S.C. § 2254(d)(1).

Petitioner's arguments arguably could be liberally construed to assert that  the KCOA decision involved an "unreasonable application" of clearly established federal law, meaning that although the state courts recognized *Strickland*'s two-prong test as controlling, that test was "unreasonably applie[d]" to the facts of Petitioner's case. *See Lockett*, 711 F.3d at 1231. The first prong of the *Strickland* test is whether "counsel's performance fell below an objective standard of reasonableness." *Holloway*, 939 F.3d at 1102. Petitioner appears to argue that the failure to persuasively argue that the jury instruction violated Petitioner's constitutional right to insist on an innocence-based defense was "below an objective standard of reasonableness" and it was unreasonable for the state courts to decide otherwise. [6]

---

[6] Petitioner cites to various cases to support his assertion that the constitutional right allegedly violated by the voluntary intoxication jury instruction was so clearly established that direct-appeal counsel necessarily fell below the objective standard of reasonable representation when she failed to assert it. But the opinion Petitioner cites from the Supreme Court of the State of Washington is not binding on the courts of Kansas. (*See* Doc. 6, p. 19 (citing *Sate v. Coristine*, 177 Wash. 2d 379, 375 (2013)).) In *Faretta v. California*, 422 U.S. 806, 819-20, 832-35 (1975), which Petitioner also cites (Doc. 6, p. 18), the United States Supreme Court addressed the right to decline court-appointed counsel and represent oneself, not the right to veto certain jury instructions as part of choosing one's defense. *See Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (explaining holding in *Faretta*). Petitioner also generally cites to *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), which held that the Sixth Amendment guarantees a criminal defendant the "[a]utonomy to decide that the objective of the defense is to assert innocence." 138 S. Ct. at 1508. (Doc. 6, p. 19.) But *McCoy* was not issued until 2018, more than 3 years after Petitioner's direct appeal was final. The question in a federal habeas

But the state courts made the factual finding that Petitioner requested the instruction be given. This fact must be taken as true in the context of this federal habeas proceeding because Petitioner has neither presented clear and convincing evidence that rebuts the presumption that the state courts' findings of fact are correct nor has he shown that the state courts' determination that he requested the instruction was unreasonable in light of the evidence in the state court proceedings. Once the fact that Petitioner requested the instruction is taken as true, his argument that giving the instruction was contrary to his wishes necessarily fails. Finally, this Court notes that direct-appeal counsel did, in fact, argue that the voluntary intoxication instruction was not requested by Petitioner and that it improperly interfered with Petitioner's wish to maintain an innocence-based defense. Thus, it is not clear what more Petitioner believes direct-appeal counsel should have done.

For all of these reasons, Petitioner has failed to show that he is entitled to federal habeas relief based on the arguments in Ground Two. He has not established that the KCOA applied a legal standard other than *Strickland* or that the KCOA's application of *Strickland* was unreasonable, and the Court concludes that the KCOA's decision that direct-appeal counsel satisfied *Strickland*'s deferential standard is reasonable. *See Harrington*, 562 U.S. at 105.

**Substitute Counsel (Grounds Three and Four)**

In Ground Three, Petitioner argues that substitute counsel was ineffective for not calling eyewitnesses H.J. and N.J. to testify at the presentencing evidentiary hearing on the motion for new trial due to alleged ineffectiveness of trial counsel. (Doc. 6, p. 8.) Specifically, he contends that H.J. and N.J.'s anticipated testimony at the hearing would have demonstrated that trial counsel

---

proceeding about a state-court conviction is whether "the earlier state court's decision 'was contrary to' federal law *then clearly established* in the holdings of" the United States Supreme Court. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011) (emphasis added).

was ineffective for failing to present their testimony at trial. *Id.* at 20-21. Similarly, in Ground Four, Petitioner argues that substitute counsel was ineffective for not calling an expert on child interviewing techniques to support the argument that trial counsel was ineffective for failing to present such testimony at trial. *Id.* at 10, 22,

Petitioner raised these issues to the Kansas courts as part of a timely filed motion under K.S.A. 60-1507. (R. 31-2, p. 15-16.) The state district court denied the motion, holding:

> **Movant's fifth claim: [Substitute counsel] was ineffective because he did not call H.J. and N.J. to testify at the hearing on the motion for new trial (New Counsel – ineffective assistance of counsel).**
>
> This allegation is denied without an evidentiary hearing. This court is able to weigh the movant's proffered evidence against the weight of the trial evidence. Assuming the girls would have testified as movant claims, their testimony does not form the basis for granting a new trial. Crystal Johnson testified the girls were sleeping when she entered the room, suggesting they did not see or hear anything. Additionally, testimony from H.J. that she was awake the entire time movant was in the room and that nothing happened would contradict movant's testimony at the evidentiary hearing on his motion for a new trial; T.J.'s testimony; the physical evidence of injury; Crystal's testimony; and the DNA evidence.
>
> Movant fails to sufficiently prove that either prong of the test for ineffective assistance of counsel has been met. [Substitute counsel] was not unreasonable for failing to call the girls as witnesses at the evidentiary hearing for the motion for new trial, and there has been no showing of prejudice.
>
> **Movant's sixth claim: [Substitute counsel] was ineffective at the hearing on the motion for new trial by not identifying and arguing that [trial counsel] was ineffective for not calling an expert to testify on the proper techniques and protocols used in interviewing child witnesses and how improper techniques can adversely affect the reliability of statements (New Counsel – ineffective assistance of counsel).**
>
> This allegation is denied without an evidentiary hearing. Presuming an unidentified expert witness would have provided a valid attack on the manner of questioning used on T.J., movant still fails to carry his burden of establishing both prongs of the test for ineffective assistance of counsel. Trial Counsel['s] performance was objectively reasonable and there is no legitimate basis to conclude the suggested expert testimony would have changed the result of trial. Because there is no basis for finding [trial counsel] ineffective, there is no basis for finding that [substitute counsel] was ineffective and for granting a new trial.

23

Movant's argument focuses on the reliability of T.J.'s statements. While experts (regarding child interviews) can provide testimony impugning the credibility of a child witness' testimony, the failure to call an expert is certainly not per se ineffective on the part of trial counsel (including in this particular claim [substitute counsel]). In *Mullins v. State*, 30 Kan. App. 2d 711 [(Kan. Ct. App. 2002)], *rev. denied* 274 Kan. 1113 (2002), the Court of Appeals ruled that defense counsel provided ineffective assistance of counsel by failing to consult or retain an expert in child interview techniques. [*Id.*] at 717. However, as the Court noted, and significant to our case, ". . . Mullins was convicted primarily on the testimony of the victim." [*Id.*] Furthermore, the Court identifies significant background details from the opinion in the direct appeal, including the fact, "there were no visual signs of sexual abuse and no witnesses to the alleged offenses." [*Id.*] at 712.

This case stands in direct contrast to *Mullins*. The movant was not convicted primarily on T.J.'s testimony. This is not a he-said-she-said case. The State presented physical evidence (including DNA analysis) as well as testimonial evidence (including statements from Crystal Johnson) that corroborated T.J.'s testimony.

Additionally, T.J.'s evolving and changing testimony was highlighted and emphasized through Trial Counsel['s] effective cross examination of witnesses, including T.J. as well as the detective. Moreover, during closing argument, [trial counsel] pointed out the inconsistencies and resulting unreliability of T.J.'s statements and how the interview techniques caused her to change her story.

The jury did acquit movant of Count One, Aggravated Criminal Sodomy.

Movant fails to sufficiently prove that either prong of the test for ineffective assistance of counsel has been met. Because [trial counsel] was not ineffective for failing to call an expert witness on interview techniques, [substitute counsel] was equally not ineffective for failing to call a similar expert witness at the hearing on the motion for new trial.

(Doc. 31-2, p. 102-03.)

On appeal from this ruling, the KCOA addressed the relevant issues as follows:

Next, Tiger argues the district court erred when it found motion counsel was not ineffective. Tiger claims motion counsel failed to argue that trial counsel was ineffective because she did not call an expert to testify about how improper interview techniques adversely affect the reliability of a child witness' statements and by not having H.J. or N.J. testify at the motion for new trial. The district court's journal entry thoroughly and correctly addressed the denial of Tiger's ineffectiveness of counsel claims against his motion counsel. We find Tiger's claims on these issues lack merit, and we affirm the district court's well-reasoned

24

decision on these issues.

*See Tiger*, 2018 WL 4376775, at *4.*

## Ground Three

In Ground Three, Petitioner argues that substitute counsel was ineffective for not calling H.J. and N.J. to testify. (Doc. 6, p. 8, 20-21.) He argues that the state district court's order denying relief—and presumably the KCOA's decision to affirm the order—was unreasonable due to its "paradoxical justification for ruling on this issue." *Id.* at 21. Petitioner asserts that the district court's order was based on the erroneous belief that counsel per se could not be held ineffective for failing to call witnesses whose testimony would contradict the state's evidence. *Id.* As with Ground Two, this Court reads the relevant state court decisions differently than Petitioner.

Rather, the Court's reading mirrors Respondent's interpretation of the district court's order. (*See* Doc. 28, p. 23). The record does not reflect that the district court completely discounted the possibility that exculpatory evidence could ever warrant a new trial. Instead, the record reflects that the court weighed the proffered testimony against the evidence that was admitted at trial and determined that the introduction of the testimony would not have changed the result of the trial. Under *Strickland*, a defendant claiming ineffective assistance of counsel must show that "counsel's performance fell below an objective standard of reasonableness *and* that the deficient performance prejudiced the defense." *Holloway*, 939 F.3d at 1102 (internal quotation marks omitted). The finding that the proffered testimony from H.J. and N.J. would not have changed the result of the trial is a finding that Petitioner did not meet the second part of the *Strickland* test. Because Petitioner did not satisfy both prongs of *Strickland*, he failed to show that trial counsel was ineffective for failing to present the girls' testimony at trial. If trial counsel was not ineffective, substitute counsel was not ineffective for failing to argue that trial counsel was. The KCOA

affirmed this reasoning.

The KCOA—and the district court order on which it relied—applied *Strickland* reasonably. Its decision to affirm the denial of the claim of ineffective assistance of substitute counsel was not contrary to *Strickland*, nor was it an unreasonable application of the correct law to the facts of Petitioner's case. Thus, Petitioner is not entitled to relief on Ground Three.

### Ground Four

In Ground Four, Petitioner argues that substitute counsel was ineffective for not calling an expert witness to testify about child interview techniques. (Doc. 6, p. 10, 22.) Specifically, Petitioner makes unsupported assertions about the beliefs of experts on this topic and concludes that "motion counsel was ineffective by not calling an expert on child interview techniques to establish that trial counsel was deficient in not presenting this compelling evidence to the jury." *Id.* at 22. In response, Respondent asserts that the KCOA reasonably applied *Strickland* and this Court should not grant federal habeas relief. (Doc. 28, p. 25-26.)

The Court has carefully reviewed the state court records submitted by Respondent and concludes that the KCOA and the state district court reasonably applied *Strickland* in denying relief on this argument. As noted in the state courts, there is no requirement that defense counsel in a case involving a child must call an expert on child interviewing techniques. Although such experts can be helpful to the defense in some cases, the state courts considered the potential effect of expert testimony in Petitioner's case in light of other evidence corroborating T.J.'s testimony[7] and in light of trial counsel's highlighting T.J.'s changing statements and arguing during closing

---

[7] Petitioner argues in his traverse that the state courts unreasonably found that Crystal Johnson's testimony corroborated T.J.'s. (Doc. 35, p. 7.) The Court has reviewed the trial transcripts and concludes that portions of Ms. Johnson's testimony do corroborate portions of T.J.'s testimony, including the timeline of events on the night in question, even if Ms. Johnson's testimony did not, as Petitioner asserts, specifically "corroborate[] any description of illegal acts."(*See* Doc. 35, p. 7.)

how interview techniques could have caused those changes.[8] The state courts concluded that the failure to call an expert witness did not prejudice the defense[9], so Petitioner failed to show ineffective assistance of trial counsel. Because trial counsel was not ineffective, substitute counsel was not ineffective for failing to argue the ineffectiveness of trial counsel.

The KCOA—and the district court order on which it relied—applied *Strickland* reasonably. Its decision to affirm the denial of the claim of ineffective assistance of substitute counsel was not contrary to *Strickland*, nor was it an unreasonable application of the correct law to the facts of Petitioner's case. Thus, Petitioner is not entitled to relief on Ground Four.

## Ground Five

In Ground Five of his petition, Petitioner argues that the Kansas state courts lacked jurisdiction to convict and sentence him because he is a member of the Muskogee Creek Nation and his alleged crimes occurred in Indian country located in Kansas.[10] (Doc. 6, p. 23.) Once again, some background information assists in resolution of this issue.

Congress adopted the Major Crimes Act (MCA) in 1885. *See Okla. v. Castro-Huerta*, 142 S. Ct. 2486, 2508 (2022), Gorsuch, J., dissenting. Under the MCA, an Indian who committed one

---

[8] Petitioner's argument in his traverse that Kansas courts have "previously recognized that the most thorough cross cannot be said to have fully informed the jury about the effect of improper interview techniques," (Doc. 35, p. 6) is unavailing. Petitioner generally cites *State v. Wells*, 289 Kan. 1219 (2009), to support his assertion. The Court has carefully read *Wells* and finds no such holding.

[9] Petitioner argues in his traverse that the finding that there was "no legitimate basis" to conclude that the proffered expert testimony would have changed the result of the trial applied a "standard contrary to *Strickland* which only required a reasonable probability of a different outcome." (Doc. 35, p. 7.) It is only logical that where there is a reasonable probability of a different trial outcome, there must be a legitimate basis to conclude that the outcome would have been different. The state court's use of the phrase "no legitimate basis" does not convince this Court that the state court applied law that is contrary to *Strickland*.

[10] In his traverse, Petitioner appears to argue that his crimes *did not* occur in Indian country and, when the Treaty of 1856 is read in conjunction with the Kansas Act, the State of Kansas lacks jurisdiction to prosecute crimes committed by a tribal member that did not occur in Indian country. (Doc. 35, p. 10-12.) Because Petitioner raises this argument for the first time in his traverse and it is contrary to his prior argument in this federal habeas matter that the crimes *did* occur in Indian country, the Court does not address it, for the reasons already explained herein. Moreover, the Court notes that Petitioner's argument to the KCOA also asserted "that the crimes occurred on land promised to [the Muskogee Creek Nation] in the treaty of 1856." (Doc. 30-14, p. 9.)

of certain enumerated crimes within "'the Indian country,'" was subject to the exclusive criminal jurisdiction of the federal courts. *See McGirt*, 140 S. Ct. at 2459 (quoting 18 U.S.C. §1153(a)). In other words, "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country.'" *Id.* (quoting *Negonsott v. Samuels*, 507 U.S. 99, 102-03 (1993)). In 2022, in *McGirt v. Oklahoma*, the United States Supreme Court "held that the Creek Reservation [in Oklahoma] had never been disestablished and that the land it encompassed remained Indian country for purposes of the Major Crimes Act." *See Pacheco v. El Habti*, 48 F. 4th 1179, 1184 (10th Cir. 2022). Thus, the State of Oklahoma lacked jurisdiction to criminally prosecute Jimcy McGirt, "an enrolled member of the Seminole Nation of Oklahoma [whose] crimes took place on the Creek Reservation." *McGirt*, 140 S. Ct. at 2459, 2478.

Petitioner argued to the KCOA that under *McGirt*, the Kansas courts lacked jurisdiction to try and convict him for the crimes for which he is now imprisoned. The KCOA held:

> Tiger presents an argument the district court did not have jurisdiction over him as a Native American for crimes committed on Native American land. Tiger's claim is conclusory and without merit. Whether a sentence is illegal within the meaning of K.S.A. 2021 Supp. 22-3504 turns on interpretation of the revised Kansas Sentencing Guidelines Act, K.S.A. 2021 Supp. 21-6801 et seq. See *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016). An "'[i]llegal sentence'" as defined by K.S.A. 2021 Supp. 22-3504(c)(1) is "a sentence: Imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." Whether jurisdiction exists is a question of law subject to unlimited review. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

> "Criminal jurisdiction over offenses committed in 'Indian country,' 18 U.S.C. § 1151, 'is governed by a complex patchwork of federal, state, and tribal law.' The Indian Country Crimes Act, 18 U.S.C. § 1152, extends the general criminal laws of federal maritime and enclave jurisdiction to Indian country, except for those 'offenses committed by one Indian against the person or property of another Indian.' [Citations omitted.]" *Negonsott v. Samuels*, 507 U.S. 99, 102, 113 S. Ct. 1119, 122 L. Ed. 2d 457 (1993).

Tiger relies on *McGirt v. Oklahoma*, 591 U.S. ——, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020), without providing much, if any, analysis. In *McGirt*, the United States Supreme Court explained land designated as an Indian reservation maintains such status until Congress explicitly states otherwise. 140 S. Ct. at 2469. Congress explicitly conferred jurisdiction on the State of Kansas in 18 U.S.C. § 3243 (1948):

> "Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.

> "This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations."

The United States Supreme Court explained "[18 U.S.C. § 3243] quite unambiguously confers jurisdiction on the State over major offenses committed by or against Indians on Indian reservations." *Negonsott*, 507 U.S. at 110. Congress has clearly given jurisdiction to Kansas over acts committed by Indians in Kansas whether on Indian reservations, including trusts or restricted allotments. We have been unable to find any indication South Wichita, where Tiger's acts occurred, was an Indian reservation, trust, or restricted allotment. Tiger's argument fails on this point as the State had jurisdiction over him even as a member of the Creek Nation for the acts he committed in South Wichita.

*State v. Tiger*, 2022 WL 4115573, *5 (Kan. Ct. App. Sept. 9, 2022) (unpublished opinion).

In his supplemental briefing, Petitioner argues that the KCOA's ruling was an unreasonable application of clearly established federal law. (Doc. 13, p. 2.) Specifically, he contends that the KCOA failed to consider—or mention—the Treaty of 1856 between the Creek Nation and the United States; this failure, he asserts, renders unreasonable the conclusion that the Kansas Act conferred jurisdiction to Kansas state courts over crimes committed by Indians in Indian country. *Id.* at 3. In support, Petitioner cites several cases that address the general principles of treaty analysis, the abrogation of congressional treaties, and tribal sovereignty. *Id.* at 2, 4-5.

Petitioner's arguments fail for two simple reasons. First, as noted throughout this

memorandum and order, this Court, sitting in a federal habeas action related to a state court conviction, must operate within the applicable standard of review. As the Tenth Circuit recently reaffirmed, in order to obtain relief under 28 U.S.C. § 2254(d)(1), Petitioner must first show that there exists "clearly established Federal law" holding that the reasoning in *McGirt* extends to the Kansas land on which Petitioner committed his crimes. *See Andrew*, 62 F.4th at 1310-11. He has not done so. Thus, the § 2254(d)(1) inquiry ends.

Secondly, at the base of Petitioner's arguments is the premise that the Kansas Act did not confer jurisdiction to Kansas state courts over crimes committed by Indians in Indian country. This premise must fail because the United States Supreme Court has directly held the opposite. In 1993, well before any of the relevant events that led to this case, the Supreme Court held that the first sentence of the Kansas Act "unambiguously confers jurisdiction on Kansas to prosecute all offenses—major and minor—committed by or against Indians on Indian reservations in accordance with state law." *See Negonsott*, 507 U.S. at 105. The pre-existence of a treaty that exclusively reserved such jurisdiction to the tribe or to the federal government does not lessen the effect of Congress' grant of jurisdiction in the Kansas Act. *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 343 (1998) ("Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."); *Murphy v. Royal*, 875 F.3d 896, 917-18 (10th Cir. 2017) (quoting *Yankton Sioux Tribe* and noting the statement in *Lone Wolf v. Hitchcock*, 187 U.S. 553, 566 (1903), that "Congress has the power to unilaterally abrogate treaties made with Indian tribes").

Thus, because the KCOA's holding that the Kansas Act establishes that the state courts had jurisdiction to convict and sentence Petitioner directly tracks a holding of the United States Supreme Court, it is not unreasonable. To the contrary, it follows well established federal law on

this point, namely the United States Supreme Court's decision in *Negonsott*.[11] None of the law Petitioner cites affects the validity of the Supreme Court's holding in *Negonsott* or the state courts'—and this Court's—duty to follow it. *See Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *Schell v. Chief Justice and Justices of Okla. Supreme Court*, 11 F.4th 1178, 1182 (10th Cir. 2021) (quoting *Rodriguez de Quijas*); *Rivera v. Schwab*, 315 Kan. 877, 890 (Kan. 2022) ("[W]e are bound to follow United States Supreme Court precedent on questions of federal law.") (citing *Arizona v. Evans*, 514 U.S. 1, 8-9 (1995)).

For the reasons stated above, the Court finds no basis on which to grant federal habeas relief on Ground Five. The KCOA's decision was not contrary to clearly established Federal law, nor did it involve an unreasonable application of clearly established Federal law, as required for relief under 28 U.S.C. § 2254(d)(1). The KCOA's decision also was not based on an unreasonable determination of the facts in light of the evidence presented to it, as required for relief under 28 U.S.C. § 2254(d)(2). Rather, the KCOA properly applied the clearly established federal law to deny Petitioner's argument for relief.

### Evidentiary Hearing

Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court determines that an evidentiary hearing is not required in this matter. "[I]f the

---

[11] In his supplemental briefing, Petitioner states:  "[I]f the Kansas Act does in fact abrogate these rights . . . the petitioner prays the court order a new trial because the state must be required to prove the elements of jurisdiction to the fact-finder." (Doc. 13, p. 6.) The Court declines to do so. First, it is unclear what "elements of jurisdiction" Petitioner believes must be proven to a fact-finder. Second, any argument that such elements were not sufficiently established in his trial is an argument challenging the sufficiency of the evidence and must be exhausted in the state courts before being raised in this federal habeas matter. There is no indication that Petitioner raised this issue to the KCOA.

record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."). The record in this case is sufficient to resolve the sole issue before the Court and it precludes habeas relief.

## Conclusion

In summary, Ground One of the petition is unexhausted and subject to an anticipatory procedural bar that prevents this Court from considering its merits. With respect to the remaining four grounds for relief, the state courts applied the correct legal standards and reasonably determined the facts in the light of the evidence presented to them. Petitioner is not entitled to federal habeas corpus relief and the petition will be denied.

Because the Court enters a decision adverse to Petitioner, it must consider whether to issue a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." With respect to procedural rulings that do not reach the merits of an underlying constitutional claim, the Court should issue a certificate of appealability "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." See *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a certificate of appealability. *Id.* at 485. The Court concludes that its procedural rulings in this matter are not subject to debate among jurists of reason and, therefore, declines to issue a certificate of appealability as to the grounds on which relief was denied as procedurally defaulted.

With respect to grounds that this Court has denied on their merits, a certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. *See* 28 U.S.C. § 2253. Having considered the record, the Court finds Petitioner has not made a substantial showing of constitutional error in the state courts and declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for habeas corpus is denied. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:  This 14th day of April, 2023, at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>

JOHN W. LUNGSTRUM
United States District Judge